# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JEANNIE MADSEN,

        Plaintiff,

v.                               No. CIV-13-00512 CEG/SMV

CITY OF ROSWELL, a municipal corporation;
LARRY FRY and JODY SCIFRES, in their
individual and official capacities; and DENNIS
KINTIGH in his official capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on *Defendants' Motion and Memorandum in Support of Motion for Summary Judgment* ("Motion"), filed June 6, 2014, (Doc. 52); *Plaintiff's Response to Defendants' Motion for Summary Judgment* ("Response"), filed June 23, 2014, (Doc. 57); and *Defendants' Reply in Support of Motion for Summary Judgment* ("Reply"), filed July 14, 2014. (Doc. 65). Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 73, the parties have consented to have this Court serve as the presiding judge and conduct all proceedings, including trial. (Doc. 31). After carefully considering the submissions of the parties, the record, and the relevant law, the Court will grant Defendants' Motion for Summary Judgment.

## I.    Background and Procedural History

      Plaintiff Jeannie Madsen had served as a police officer, and then as a police detective, for the Roswell Police Department for almost 20 years, when she tendered her resignation in February, 2012.  In the fall of 2010, the Roswell Police Department had an interim Chief of Police and interim Deputy Chief of Police because the officers

holding those positions had recently resigned. Plaintiff alleges that during that time she advocated for one of her fellow officers for the Chief of Police position, and encouraged other police officers to voice their support for their favorite candidate. She also openly discussed her concerns about the Department and management with other police officers and the public. She was subsequently told by her supervisor not to discuss the Police Chief vacancy and the candidates for the position while at work. In January, 2011, she filed two complaints against other officers in the Department, alleging harassment and hostile work environment. She also claimed that she was being retaliated against for speaking out about her preferred candidate for Police Chief.

In January, 2011, Plaintiff was arrested and charged with battery against a household member, and placed on administrative leave with the Roswell Police Department. The Department subsequently conducted an internal investigation, and transferred Plaintiff into a police radio dispatcher position pending the outcome of the investigation. The investigation resulted in a sustained finding of domestic violence in violation of the Department's policy. In February, 2012, Plaintiff was recommended for termination, but chose to resign from the Department instead.

Plaintiff brings a claim under 42 U.S.C. § 1983, alleging that she was wrongfully transferred, demoted, and eventually forced to resign from her position with the Roswell Police Department, in retaliation for exercising her First Amendment right to freedom of speech. Plaintiff asserts her claim against the City of Roswell, as well as Larry Fry and Jody Scifres in their individual and official capacities, and Dennis Kintigh in his official capacity only.[1] She seeks damages and equitable relief.

---

[1] Plaintiff initially brought claims against Defendant Kintigh in his individual and official capacities. Defendants argued in their Motion that claims against Defendant Kintigh in his personal capacity should

2

Defendants move for summary judgment on the basis that Plaintiff's speech was not protected by the First Amendment because Plaintiff has failed to demonstrate that any of her speech touched on a matter of public concern. Defendants also maintain that Plaintiff has not set forth enough facts to show that any adverse employment decision made was for a reason other than her commission of a battery against a household member.

Plaintiff disagrees, and responds that her speech was clearly on a matter of public concern and therefore all of her statements were protected by the First Amendment. She further argues that she has presented enough facts to demonstrate the existence of a genuine issue of material fact as to whether her speech was a substantial or motivating factor in the decisions to transfer her from her detective position, demote her, and eventually force her to resign. Therefore, Plaintiff contends, Defendant's Motion for Summary Judgment should be denied.

## II.    Standard of Review

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.* A movant who does not bear the burden of persuasion at trial, such as Defendants, need not negate the nonmovant's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Such a movant only

be dismissed because Plaintiff has not made any factual allegations that he was personally involved in any adverse employment decision alleged in this case. Plaintiff subsequently dismissed her claim against Defendant Kintigh in his personal capacity. (Doc. 57 at 2).

bears the burden of making a prima facie demonstration that there is no genuine issue of material fact, and may do so by pointing out a lack of evidence on an essential element of the nonmovant's claim. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex Corp.,* 477 U.S. at 323, 325).

If the moving party has demonstrated an absence of material fact, then the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson,* 477 U.S. at 249. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to her. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995). To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See Adler*, 144 F.3d at 671.

### III.    Undisputed Material Facts

Plaintiff was initially hired as a police officer with the Roswell Police Department in December, 1999, and remained employed with the Department through February, 2012. (Doc. 52 at 3; Doc. 57 at 2, 4; Doc. 65 at 3). Plaintiff was eventually promoted to Police Detective, and worked in the Criminal Investigations Division of the Department. (Doc. 1 at 3, 4). In fall 2010, the Roswell Police Chief position became vacant and the City of Roswell was engaged in a search process to select the new Police Chief. (Doc.

52 at 3; Doc. 57 at 2, 4). The Roswell Police Department was going through "some tough times," because both the Chief of Police and the Deputy Chief of Police had recently resigned from their positions. (Doc. 52-5 at 7:14–19; Doc. 57 at 6; Doc. 65 at 3). Defendant Scifres, who served as the interim Deputy Chief of Police during that time, testified that during that period, the Department was like "a ship without a captain." (Doc. 52 at 3; Doc. 52-5 at 7:20–25; Doc. 57 at 2, 4; Doc. 65 at 3).

Plaintiff was concerned about who the next Chief of Police would be because she believed that the morale of the Department was low, which impacted the officers' ability to serve the community. (Doc. 57 at 6; Doc. 65 at 3). Throughout the fall of 2010, Plaintiff and other Roswell police officers discussed the vacant Police Chief position and the candidates who had applied for the job. (Doc. 52 at 3; Doc. 57 at 2, 4). She also discussed issues of understaffing and department morale with other officers at officer briefings and at police union meetings.[2] (Doc. 52 at 5; Doc. 57 at 2). She testified that while other officers were speaking negatively about Defendant Scifres, who was the acting Deputy Chief of Police, she did not speak negatively about him. (Doc. 52 at 5; Doc. 57 at 2). She claims that, with regard to the vacant Police Chief position, she only spoke out in support of fellow officer Dan Kyser's candidacy. (Doc. 52 at 5; Doc. 57 at 2).

On or around December 14, 2010, Plaintiff spoke with Roswell Police Commander Bill Brown regarding these conversations. (Doc. 52 at 3; Doc. 57 at 2; Doc.

---

[2] Plaintiff contends it is undisputed that she also discussed her concerns about the Police Department with officers and citizens at the City of Roswell Yucca Community Center. (Doc. 57 at 6) (referring the Court to a deposition attached to her Response, identified as Doc. 58-3 at 113:18–115:4). Defendants contest the allegation on the basis that it is unsupported by any evidence of record. *See* Fed. R. Civ. P. 56(c). The Court has reviewed all of the exhibits attached to the Response, and cannot find any corresponding documents to support Plaintiff's contention, and therefore, does not consider this to be an undisputed fact.

60-9 at 1). Commander Brown is the Support Services Commander of training and recruiting, the systems administrator for the records management system, and the accreditation manager for the New Mexico Municipal accreditation process. (Doc. 57 at 2–3; Doc. 65 at 3). At the time of their meeting, Commander Brown was one of Plaintiff's supervisors in the Department. (Doc. 57 at 4; Doc. 65 at 4). Commander Brown advised Plaintiff not to discuss the Police Chief position or the Police Chief candidates while on duty, as it had become a distraction at work. (Doc. 52 at 3–4; Doc. 57 at 2). Commander Brown informed Plaintiff that she should discuss her opinions about the Police Chief position when she was off duty. (Doc. 57 at 3; Doc. 65 at 3). Plaintiff informed Commander Brown that she had not been speaking negatively about Defendant Scifres. (Doc. 52 at 4; Doc. 57 at 2).

On December 17, 2010, Plaintiff delivered a number of letters from police officers to Roswell Mayor Del Jurney and Defendant Fry. (Doc. 52 at 3; Doc. 57 at 2). These letters purported to express several police officers' preferences for the new Roswell Police Chief.[3] (Doc. 52 at 3; Doc. 57 at 2). Most of the letters were unsigned. *Id.* However, Plaintiff signed her letter, which expressed her support for Dane Kyser's candidacy as the next Roswell Police Chief. (Doc. 52 at 3; Doc. 57 at 2, 4; Doc. 60-9 at 1; Doc. 65 at 4).

Plaintiff's letter was addressed to Mayor Jurney and Defendant Fry in his

---

[3] Plaintiff claims that the officers who wrote the letters feared retaliation, and either did not want to write any more letters or refused to identify themselves in their letters. (Doc. 57 at 4). Defendant objects to this characterization on the basis that the letters, as submitted by Plaintiff with her Response, (Doc. 60-9 at 2– 19), are impermissible hearsay in contravention of Fed. R. Civ. P. 56(c) and Fed. R. Evid. 801. The Court agrees with Defendants that the unsigned, unauthenticated letters, submitted by unknown declarants, and Plaintiff's testimony regarding the same, fall within the prohibition against hearsay. Further, Plaintiff has not alleged that any of these letters form the basis of her claim. Therefore, the Court does not consider them.

capacity as the Roswell City Manager. (Doc. 52 at 3; Doc. 57 at 2, 3; Doc. 65 at 3). Defendant Fry has been City Manager since approximately October, 2010. (Doc. 57 at 3; Doc. 58-6 at 9:24–10:2; Doc. 65 at 3).  As City Manager, Defendant Fry was the final decision-maker in the hiring, termination, and transfer of City of Roswell and Roswell Police Department employees. (Doc. 57 at 4; Doc. 65 at 3). Therefore, Defendant Fry was the final authority on the selection of the next Roswell Police Chief. (Doc. 57 at 4; Doc. 65 at 3). Alfonso Solis was ultimately selected as the next Roswell Chief of Police by Defendant Fry. (Doc. 52 at 8; Doc. 57 at 2). Defendant Fry does not remember any other instances of officers ever writing letters to the City Manager or Assistant City Manager about who they wanted as the Roswell Chief of Police. (Doc. 57 at 5; Doc. 65 at 3).

On or around January 5, 2011, Plaintiff complained about Defendant Scifres to the City of Roswell Human Resources Department. (Doc. 52 at 4; Doc. 57 at 2; Doc. 60). Plaintiff contended that Defendant Scifres placed an article titled "Chronic Complainers Club" in her mailbox and other officers' mailboxes at work. (Doc. 52 at 4; Doc. 57 at 2).

On or around January 28, 2011, Plaintiff filed a complaint against Defendant Scifres and Officer Brad McFadden with the Human Resources Department, based on an incident that occurred at an officer briefing on December 14, 2010. (Doc. 52 at 5; Doc. 57 at 2). Plaintiff complained that McFadden had an outburst during the briefing over his perception that the other officers believed he was promoted because of his friendship with Defendant Scifres. (Doc. 52 at 5; Doc. 57 at 2). McFadden directed his comments to all of the officers present during the briefing. (Doc. 52 at 5; Doc. 57 at 2).

7

Defendant Scifres was not present at the briefing, and only learned about the incident after the meeting. (Doc. 52 at 5; Doc. 57 at 2).

Plaintiff was unable to identify any other instances of her speech that she contends were protected by the First Amendment and resulted in retaliation against her. (Doc. 52 at 5; Doc. 57 at 2). Plaintiff testified that she could only vaguely recall "things that were said" about morale, staffing, and shift hours, but could not recount any specific statements that she made or anyone that she spoke to, other than her fellow officers and the police union. (Doc. 52 at 5–6; Doc. 57 at 2).

Plaintiff repeatedly stated during her deposition that she had not spoken negatively about Defendant Scifres, and that she rarely initiated conversations about the police chief vacancy or the applicants for the position. (Doc. 52 at 6; Doc. 57 at 2). Instead, she claims that she was often approached by others who initiated these conversations. (Doc. 52 at 6; Doc. 57 at 2).  However, Plaintiff did admit to expressing dissatisfaction regarding Defendant Scifres' management style, particularly as it affected staffing and morale within the Police Department. (Doc. 52 at 6; Doc. 57 at 2). She also expressed her belief that the Police Department's problems would not improve if Defendant Scifres were selected as Police Chief. (Doc. 52 at 6; Doc. 57 at 2).

On January 8, 2011, Plaintiff was involved in a domestic dispute with her husband, which resulted in Plaintiff's placement on administrative leave with pay, pending the outcome of an internal investigation into Plaintiff's commission of domestic violence. (Doc. 52 at 6–7; Doc. 57 at 2). Following a pre-determination hearing that took place on January 31, 2011, Defendant Fry transferred Plaintiff from her position as Defendant in the Criminal Investigations Division to the Consolidated Dispatch Center.

(Doc. 1 at 4; Doc. 52 at 9; Doc. 57 at 2, 5; Doc. 65 at 5). On August 30, 2011, Plaintiff entered into a pre-prosecution diversion program, admitted to the commission of domestic violence, and agreed that the charges would be dismissed upon her completion of the program. (Doc. 52 at 9–10; Doc. 57 at 2).

Plaintiff was ultimately reinstated in her previous position with the Police Department in January, 2012, and then immediately placed on administrative leave with pay. (Doc. 52 at 10; Doc. 57 at 2). The new Deputy Chief of Police, Philip Smith, recommended that Plaintiff be terminated for violating the Police Department's domestic violence policy. (Doc. 52 at 10; Doc. 57 at 2). In lieu of termination, Plaintiff tendered her resignation from the Roswell Police Department on February 16, 2012. (Doc. 52 at 10; Doc. 57 at 2).

## IV.   Analysis

Defendants contend that they are entitled to judgment as a matter of law because Plaintiff has failed to demonstrate that any of her speech is a kind that was protected by the First Amendment. Specifically, Defendants allege that Plaintiff has not shown that her speech touched on matters of public concern. Defendants further argue that Plaintiff has failed to establish sufficient facts to prove that Plaintiff's speech was a substantial or motivating factor in decisions related to her employment with the Roswell Police Department.

### A.   Garcetti/Pickering *Analysis*

The State has significantly different interests in regulating the speech of its employees than in regulating the speech of the citizenry generally. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). As a government employee, a "citizen by necessity

must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). However, the First Amendment limits the public employer's ability "to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (quotation omitted). When a government employee speaks on a matter of public concern, her employer may only restrict her speech because it is necessary for the efficient and effective delivery of services. *Id.*

The Court must conduct a five-step inquiry in considering a plaintiff's freedom-of-speech retaliation claim, known as the "*Garcetti/Pickering*" analysis. *Id.* First, the Court asks whether the speech was made pursuant to the employee's official duties. *Id.* (quotation omitted). If so, then the speech is not protected because the restriction properly "reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* (quotation omitted).

If the employee's speech is outside of her official duties, then the Court should next determine whether the subject of the speech is a matter of public concern. *Id.* If it is not a matter of public concern then it is not constitutionally-protected speech. *Id.* at 1203. When an employee speaks upon matters of personal interest, that speech is unprotected. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1263 (10th Cir. 2005). However, if the speech is a matter of public concern, the Court should proceed to step three and decide whether the employee's interest in commenting on the issue outweighs those of the state as the employer. *Brammer-Hoelter*, 492 F.3d at 1203. While, the first three steps in the *Garcetti/Pickering* analysis are questions of law for the Court to decide, *id.*,

they may turn on resolution of a factual dispute by the jury. *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010)

If the employee's interest outweighs the employer's, then the Court proceeds to step four. At step four, the employee must establish that her speech was a substantial factor or motivating factor in a detrimental employment decision. *Brammer-Hoelter*, 492 F.3d at 1203. If the employee establishes the speech was a substantial or motivating factor, then "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Id.* The final two steps of the inquiry should ordinarily be decided by a trier of fact. *Id.*

The parties agree that step one of the *Garcetti/Pickering* analysis is satisfied because Plaintiff's speech was made outside of her official duties as a detective in the Roswell Police Department. (Doc. 52 at 12; Doc. 57 at 11–12). Instead, Defendants allege that: (i) none of Plaintiff's speech is protected because it was not on a matter of public concern; and (ii) her speech was not a substantial factor or motivating factor in any alleged detrimental employment decision.

## B.    *The Court Will Consider Each Instance of Speech Separately*

Plaintiff urges the Court to consider her pattern of speech as a unitary whole in undertaking the *Garcetti/Pickering* analysis. (Doc. 57 at 14). The determination of whether the unitary approach is appropriate is fact sensitive, and depends on the interrelatedness of the different aspects of the speech. *See Johnsen v. Indep. Sch. Dist. No. 3*, 891 F.2d 1485, 1492 (10th Cir. 1989). The Court must consider relevant factors, such as the time frame in which the speech occurred, the audiences to which the speech was directed, the continuity of the speech, and the degree to which the different

aspects of the speech created a cumulative impact on the government employer. *Id.* A unitary analysis may be appropriate when the speech involves multiple instances but only one subject. *See id.* However, if the speech involved multiple instances and multiple, unrelated subjects, then the Court must conduct the *Garcetti/Pickering* analysis on each instance of speech. *See, e.g.*, *Brammer-Hoelter*, 492 F.3d at 1205–06.

In this case, Plaintiff contends that her constitutionally-protected speech consists of: (i) the December 17, 2010 letter addressed to Mayor Jurney and Defendant Fry stating her support for Dane Kyser for Chief of Police; (ii) the January 5, 2011 complaint to the Human Resources Department alleging Defendant Scifres was creating a hostile work environment; (iii) the January 28, 2011 complaint to the Human Resources Department alleging Defendant Scifres and Brad McFadden were creating a hostile work environment; and (iv) all of the conversations that she had with fellow police officers and other city employees regarding the low morale, understaffing, and work hours at the Police Department, and the vacant Chief of Police position.

Plaintiff acknowledges that all of her speech occurred on separate occasions over many months. She argues that the Court should consider all of her speech together for the reasons that she "brought letters to the Mayor and City Manager" and talked to other officers and citizens. (Doc. 57 at 14). The Court has reviewed each instance of speech, and does not find Plaintiff's argument convincing in consideration of the *Johnsen* factors. The subject matter of, and intended audiences for, Plaintiff's varied instances speech are too disparate to be considered as a unitary whole for purposes of the *Garcetti/Pickering* analysis. Therefore, the Court will consider each instance of speech independently.

C.    _Step Two: Plaintiff's Speech Was Not a Matter of Public Concern_

Defendants contend that Plaintiff's speech is not constitutionally protected

because it did not touch on matters of public concern. Defendants argue that the

speech falls short of the standards articulated by the Tenth Circuit because it concerned

only personal matters. Plaintiff responds that all of her speech is protected by the First

Amendment because the selection of the Roswell Chief of Police is a major news item,

and the successful operation of the Roswell Police Department is of interest to the

public at large.

"Matters of public concern are those of interest to the community, whether for

social, political, or other reasons." *Brammer-Hoelter*, 492 F.3d at 1205 (quotation

omitted). An employee's speech must not merely relate generally to a subject matter

that is of public interest, but must "sufficiently inform the issue as to be helpful to the

public in evaluating the conduct of government." *Wilson v. City of Littleton, Colo.*, 732

F.2d 765, 768 (10th Cir. 1984). The content of challenged speech is the "crux of the

public concern content inquiry." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 727

(10th Cir. 2011); *see also Withiam v. Baptist Health Care*, 98 F.3d 581, 583 (10th Cir.

1996) (quotation omitted). The Court looks beyond the general topic of the speech to

evaluate more specifically what was said on the topic, *Schrier*, 427 F.3d at 1263, "which

must itself be of public concern." *Leverington*, 643 F.3d at 727. Therefore, "[a] statement

does not attain the status of public concern simply because its subject matter could, in

different circumstances, have been the topic of a communication to the public that might

be of general interest." *Id.* (quotation omitted).

"Whether speech relates only to personal matters as an employee as opposed to

13

public matters as a citizen depends on the content, form, and context of a given statement, as revealed by the whole record." *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1233 (10th Cir. 1998) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)) (internal quotation omitted). For example, the Tenth Circuit has held that speech regarding grievances about internal departmental affairs, disputes over the terms of employment, and workplace frustration, were not on matters of public concern. *Brammer-Hoelter*, 492 F.3d at 1205 (citing *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996), *Lancaster*, 149 F.3d at 1233–34, and *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989), respectively).

"To judge whether particular speech relates merely to internal workplace issues, courts must conduct a case by case inquiry . . . which includes scrutinizing whether the speaker's purpose was to bring an issue to the public's attention or to air a personal grievance." *Schrier*, 427 F.3d at 1263 (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir. 1995)) (internal quotations and alterations omitted). In considering the speaker's motivation in making the statements, the Court analyzes whether the speech was calculated to disclose misconduct, wrongdoing, inefficiency, or other malfeasance on the part of government officials in the conduct of their official duties, *Lancaster*, 149 F.3d at 1234, or merely dealt with personal disputes unrelated to the public's interest. *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000).

The Court will analyze each instance of Plaintiff's speech separately, and determine whether the speech was on a matter of public concern. If the Court finds that Plaintiff's speech was not on a matter of public concern, then the Court must hold that the speech is unprotected, and end its inquiry pursuant to *Garcetti/Pickering. See*

14

*Brammer-Hoelter*, 492 F.3d at 1203

        1.    *Letter to Mayor Jurney and Defendant Fry: December 17, 2010*

Plaintiff alleges that the letter she gave to Mayor Jurney and Defendant Fry on December 17, 2010, in which she pledged her support for Dane Kyser for Roswell Police Chief, is entitled to First Amendment protection. Defendants argue that Plaintiff's speech did not touch on matters of public concern because her letter was simply a discussion of her preference for her next boss. (Doc. 52 at 14). Defendants point out that the letter was not shared with the general public or media, and that it did not amount to an attempt to disclose any official misconduct by a police official. *Id.* at 15. Therefore, Defendants conclude, the speech was of a purely personal nature, and is not protected speech. *Id.*

Plaintiff responds that the speech was a matter of public concern because it was on the subject of who would be best able to run the Roswell Police Department, which is "a major news item." (Doc. 57 at 13). She reasons that a police officer's opinion as to who would be the best Chief of Police is important to the public, because the public has a "dire need to know who is leading their police department." *Id.* at 13–14.

First, the Court looks to the "content, form, and context" of Plaintiff's speech to determine whether it addresses a matter of public or personal concern. *Connick*, 461 U.S. at 147–48. The Court views all of the evidence in the record in the light most favorable to Plaintiff. *See Panis,* 60 F.3d at 1490. In her letter to Mayor Jurney and Defendant Fry, Plaintiff wrote: "I would like to show my support for Dane Kyser for Chief of Police of the Roswell Police Department. I have known Dane Kyser to be fair and consistent." (Doc. 60-9 at 1). She disclosed that she had been admonished by

Commander Brown for "talking negatively about Chief Deputy Jody Scifres for Chief," and was instructed to cease talking about the Police Chief position while at work. *Id*. She wrote that she had talked to other officers and advised them that she was going to write a letter in support of Dane Kyser's application for Police Chief, and that she had encouraged them to write letters. *Id*. She stated that some officers in the department were fearful of being retaliated against if they wrote letters in support of anyone for Police Chief. *Id*.

Plaintiff contends that her endorsement of Dane Kyser was the type of political speech that is clearly protected by the First Amendment. It is true that political expression has long been afforded the broadest protection by the First Amendment. *Bass v. Richards*, 308 F.3d 1081, 1089 (10th Cir. 2002). A citizen's ability to make her own "assessment of a candidate's qualifications for public office is integral to the operation of the system of government" which is protected by the First Amendment. *Id*. (internal quotation omitted). The Tenth Circuit has observed that political speech involves advocacy of a particular candidate for public office, while emphasizing that courts place the greatest value upon political speech in the electoral process. *See Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996).

Defendants point out that Plaintiff has never alleged that the Roswell Chief of Police is an elected position or that Dane Kyser was a candidate running for public office. Therefore, they contend that the speech is not properly characterized as political in nature, or afforded the First Amendment protection as Plaintiff alleges.

Indeed, it is undisputed that Defendant Fry, and not the electorate, was charged with choosing the next Roswell Chief of Police. (Doc. 57 at 4; Doc. 65 at 3). Therefore

Plaintiff's advocacy for Dane Kyser was not "the type of core political speech the First Amendment was designed to protect." *Id.* Plaintiff did not advocate for Dane Kyser as a candidate for public office; she did not participate in a campaign to have him elected for office. She merely stated her preference for who she believed that her next boss should be, to the individual charged with filling that position. The Court cannot find that these facts fit within the category of political speech that the U.S. Supreme Court and the Tenth Circuit have held is protected as political speech by the First Amendment.

In her letter, Plaintiff also alerted the Mayor Jurney and Defendant Fry to her reprimand by Commander Brown, and alleged that her fellow officers feared retaliation if they voiced any opinion regarding the Police Chief position. The Court may consider the circumstances surrounding the speech, such as whether the speech was presented in a public forum and the timing of the speech, because such facts provide context for whether a statement is of public concern. *See Moore*, 57 F.3d at 932 (noting that comments made at a city council meeting were matters of public concern, in part because of the public forum in which they were expressed); *see also Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1229 (10th Cir. 2014) (holding that plaintiff's speech was of public concern, because it was made to the media, and statements protected under the First Amendment are protected in part by fact of being made to the media).

Here, Plaintiff's speech took the form of a private letter addressed to only two public officials. Plaintiff does not allege that she intended to make her letter to Mayor Jurney or Defendant Fry public. Thus, Plaintiff's letter was not presented in a public forum, which cuts against her contention that her speech concerned a public matter.

Deciding whether Plaintiff's letter was on a matter of public concern, in

17

consideration of the content, form, and context of the speech alone, is a close call in this case. Therefore, the Court will also consider Plaintiff's motive in writing and sending the letter. The Court analyzes "the motive of the speaker and whether the speech [was] calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Lighton*, 209 F.3d at 1224. Speech may involve a public concern when the speaker intends to "'bring to light actual or potential wrongdoing or breach of public trust'" by a public officer, or to disclose "evidence of corruption, impropriety, or other malfeasance" within a governmental entity. *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) (internal quotations and alterations omitted). Thus, the inquiry should focus "on the extent to which the content of the employee speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of governmental officials in the conduct of their official duties." *Koch v. Hutchinson*, 847 F.2d 1436, 1445 (10th Cir. 1988).

Plaintiff clarified in her deposition that her only motive in writing the letter was to support Dane Kyser's candidacy for Chief of Police. (Doc. 52-4 at 4:4–16). She explained that she wanted to support who she thought would be a good candidate to run the Police Department and help recruit more officers. (Doc. 52-1 at 21:17–25). Plaintiff does not allege that any of her speech was calculated to disclose wrongdoing, misconduct, governmental inefficiency, or malfeasance by Defendant Scifres, Commander Brown, or any City of Roswell official. To be sure, the Court will compare the facts here with previous Tenth Circuit decisions considering the nature of a police officer's written speech.

In *McEvoy v. Shoemaker*, the plaintiff submitted a letter to the City Council

18

complaining about office politics, favoritism, training, transfers, and personnel relationships within the police department. *McEvoy*, 882 F.2d at 465. The plaintiff held out that he was authorized to speak on behalf of others in the department. *Id.* at 466. He also complained that he had not been selected for a promotion or specialized training. *Id.* at 465. The *McEvoy* Court reasoned that, if a court examines the content and context of the employee's statement, and finds that "the employee's personal interest *qua* employee predominates over any interest he might have as a member of the general public," then the speech is not on a matter of public concern. *Id.* at 466 (quoting *Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989)). The Tenth Circuit further noted that, while "public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *McEvoy*, 882 F.2d at 467 (quoting *Connick*, 469 U.S. at 149). The Tenth Circuit concluded that, because the plaintiff had only alleged mismanagement and inequities, and his principal purpose in writing the letter was to air his personal frustration and express his disappointment over internal office affairs, his speech was not on a matter of public concern. *McEvoy*, 882 F.2d at 467.

In *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989), the plaintiff delivered a letter to the Kansas Attorney General requesting a formal investigation into the actions of the Wichita Police Chief. The *Wulf* plaintiff alleged the police chief impermissibly interfered with the right of some officers to join a certain private officer club, treated officers unfairly based on their membership in certain private officer clubs, misappropriated and misused public funds, and permitted a culture of sexual

harassment. *Id.* at 857. The Tenth Circuit found that, because the *Wulf* plaintiff's speech was directed to a public official seeking a formal investigation of a police chief's alleged misconduct, a finding of public concern was strongly supported by the evidence. *Id.*

The speech asserted in Plaintiff's letter is more akin to the speech in *McEvoy*, than that in *Wulf*. In her letter, Plaintiff shared her experience of being reprimanded for discussing the Police Chief vacancy while on duty. She also stated that some officers possessed a subjective belief they would be retaliated against for writing a letter supporting any Police Chief applicant. She testified that her motive for writing the letter was only to express her support for her preferred candidate for Police Chief. Plaintiff did not allege serious police misconduct, or request that Mayor Jurney and Defendant Fry initiate a formal investigation, as in *Wulf*. The evidence in the record strongly suggests that Plaintiff's personal interest as an employee of the Roswell Police Department predominated her interest as a member of the general public. *See McEvoy*, 882 F.2d at 467.

Having considered the content, context, and form of Plaintiff's speech, as well as her stated motives, the Court does not find that Plaintiff's speech was on a matter of public concern. While the Court concedes that the operation of the Roswell Police Department constitutes a legitimate subject of public concern, Plaintiff's letter failed to "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Wilson*, 732 F.2d at 768. Because the Court finds that Plaintiff's letter to Mayor Jurney and Defendant Fry was not on a matter of public concern, Defendants are entitled to summary judgment as to that instance of speech.

   2.   *Complaint to the Human Resources Department: January 5, 2011*

The next instance of speech that Plaintiff contends is protected is her complaint

to the City of Roswell Human Resources Department dated January 5, 2011. (Doc. 60).

Plaintiff complained that she was being singled out and harassed by Defendant Scifres,

and that he was creating a hostile work environment. Defendants contend that the

speech was personal in nature because the purpose of the letter was to air a personal

dispute or grievance. (Doc. 52 at 13–14). Plaintiff responds that her speech concerned

government policies that are of interest to the public at large. (Doc. 57 at 13). She also

maintains that all of her statements concerning Defendant Scifres' character,

competence and fitness for duty are matters of public concern and protected speech.

(Doc. 1 at 8).

In the January 5, 2011 complaint, Plaintiff stated that she was reporting

harassment under "City Rules and Regulations 1001.0." (Doc. 60). She reported that on

January 4, 2011, Defendant Scifres placed an article published by the National Tactical

Officers Association, entitled the "Chronic Complainers Club, Part One," in her work

mailbox.[4] (Doc. 52-5 at 4:4–10; Doc. 60). She stated that only she and three other

detectives received the article, and therefore she believed that Defendant Scifres was

harassing and intimidating her because she had not endorsed him for Chief of Police.

(Doc. 60). She requested that Defendant Scifres immediately cease the offending

behavior, and be required to attend a refresher course on harassment in the work place.

*Id.*

She further explained that, since she voiced her support for Dane Kyser for

Police Chief to Mayor Jurney and Defendant Fry, she was being singled out and

---

[4] A copy of the article was not provided to the Court, and therefore its substance is unknown.

harassed at work, and that the work environment was hostile. (Doc. 60). She stated her belief that Defendant Scifres had been the one who told Commander Brown to reprimand her in December, 2010 for discussing the Police Chief vacancy while on duty. *Id*. She recounted her meeting with Commander Brown, and acknowledged that she encouraged the other officers to write letters of support for their preferred Police Chief applicant and told them that "change [is] good." *Id*. She described her discussions with other officers as "personal conversations," and asserted that she had been singled out by Commander Brown despite many other officers regularly discussing the Chief of Police position while at work. *Id*.

The Court looks to content, form, and context of the speech, and considers the motivation of the speaker, in determining whether it was on a matter of public or personal concern. In this instance, the subject matter of Plaintiff's speech was that Defendant Scifres distributed an article that offended her, and the stated purpose of Plaintiff's speech was to file a grievance against Defendant Scifres and complain about a hostile work environment.

As discussed above, speech that "discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials" will generally be on matters of public concern. *Conaway,* 853 F.2d at 796. However, the U.S. Supreme Court has cautioned that "[i]t is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2501 (2011). Not every criticism directed at a public official will "plant the seed of a constitutional case." *Connick*, 461 U.S. at 163 (quotation omitted).

22

Again, the Court compares Plaintiff's speech in this instance with the speech that was at issue in *McEvoy* and *Wulf*. Plaintiff requested that the Human Resources Department intervene and require Defendant Scifres to immediately cease his offending behavior and attend a session on workplace harassment. The fact that it was in the form of a complaint submitted to the Human Resources Department also implies that Plaintiff was requesting a formal inquiry be made into Defendant Scifres' behavior. However, Plaintiff's speech was directed towards the Human Resources Department, and there is no allegation that it was ever intended to be made public. Further, it is on an intra-department personnel matter that only implicated Plaintiff and Defendant Scifres' professional relationship. The Tenth Circuit has noted that such an allegation only facially demonstrates a personal grievance with a public official, and therefore "unequivocally reflects a personal dispute, not a matter of public concern." *Leverington*, 643 F.3d at 727 n.5.

The Court is further guided by the Tenth Circuit's analysis in *Hom v. Squire. See Hom*, 81 F.3d at 969. In *Hom*, the plaintiff claimed that he was fired from the Utah Department of Public Safety for filing grievances against his supervisors for failing to honor his employment contract and compensate him fully for his work. *Id.* at 972. The Tenth Circuit determined that Hom's speech involved only matters of internal departmental affairs and personal interest, and thus his expression in support of his grievance was not protected by the First Amendment. *Id.* at 974.

In this case, Plaintiff alleges that all of her statements concerning Defendant Scifres are protected because they question his character, competence, and fitness for duty. However, the actual subject matter of her complaint to the Human Resources

Department merely alleges that Defendant Scifres had created a hostile work environment and harassed her by placing a copy of an article in her mailbox. Plaintiff has not even provided the Court with a copy of the article to review. The Court finds that, like the grievances involved in *Hom*, the speech in this case involved only matters of internal departmental affairs and workplace frustration, and therefore were only on matters of personal interest.

After considering the content, form, and context of the speech in Plaintiff's January 5, 2011 complaint, as well as Plaintiff's stated motive for the speech, Plaintiff's speech was not on a matter of public concern. Therefore, Plaintiff's speech was not protected, and Defendants are entitled to summary judgment.

### 3. Complaint to the Human Resources Department: January 28, 2011

Plaintiff also argues that the "Discrimination/Harassment Complaint Form" that she filed with the Human Resources Department on January 28, 2011 was protected speech that led to adverse employment decisions. Defendants contend that such speech was personal in nature, while Plaintiff responds generally that all of her speech is of concern to the Roswell community.

Plaintiff filed a complaint with the Human Resources Department on January 28, 2011 against Defendant Scifres and Brad McFadden. (Doc. 52-6). She listed the date of the alleged offending incident as December 14, 2010. *Id* at 1. However, when asked to provide specific information regarding the facts underlying her complaint, she only described events that occurred on January 3, 2011 that involved McFadden. *Id* at 2. She wrote that McFadden had an outburst during an officer briefing because he perceived his fellow officers as believing that he only received a promotion because of

24

his friendship with Defendant Scifres. *Id.* at 2. She also attached a message that McFadden published on a social-media website, which she contends was posted "[a]fter letters of support were known." *Id.* at 2, 3. The message is not directed toward Plaintiff, but generally toward people dissatisfied with their jobs. *Id.* at 2. Aside from naming Defendant Scifres on the first page of the complaint, she did not make any specific allegation that he had harassed her or created a hostile work environment.

Again, an employee's speech raising concerns over how government officials are performing their duties will not always constitute a matter of public concern. *See Borough of Duryea*, 131 S. Ct. at 2501. While Plaintiff's speech was intended to disclose employee misconduct, its subject was not on matters of public concern. Plaintiff's grievance about McFadden's outburst and social media message was directed to the Human Resources Department, and not the public at large. The speech merely consisted of one public employee's interpersonal conflict with another.

Based on the content, form, and context of the speech, as well as Plaintiff's motive for making the speech, the Court cannot find that it rises to the level of relating to any political, social, or other concern to the community. Therefore, the Court must find that Plaintiff's statements were not on a matter of public concern, and that Defendants are entitled to summary judgment.

### 4. *Conversations with Fellow Officers and Other City Employees*

Last, Plaintiff alleges that her numerous conversations with fellow officers and other city employees were protected speech, which led to retaliation against her at the Police Department. Defendants contend that the speech was entirely personal in nature, because it only concerned internal department affairs, workplace frustration, and

Plaintiff's personal opinions as an employee of the Roswell Police Department. (Doc. 52 at 14). Plaintiff responds that all of her speech is protected because it related to matters of political, social, or other concern to the community. (Doc. 57 at 13).

Throughout the fall of 2010, Plaintiff and other detectives in her division discussed the vacant chief position and the applicants for the position at officer briefings and police union meetings. (Doc. 1 at 4; Doc. 52-1 at 3–5). She alleges that during those meetings she told the other detectives that the Roswell Police Department needed a change and that she hoped Dane Kyser would be selected for the position of Police Chief. (Doc. 1 at 4). She contends that she told other officers that the Department needed to end the "good ole boy" system. (Doc. 1 at 4). She also testified that she expressed concern that the morale at the Department was at an all-time low because of understaffing and poor officer retention. (Doc. 52-1 at 16–20).

Plaintiff testified during her deposition that the Roswell Police Department officers brought up the Department's low morale on a daily basis, usually in the briefing area of the Department. (Doc. 52-1 at 3:8–4:10). She stated that these conversations usually focused on the officers' complaints that the Department was understaffed, that they had to work overtime, and that the detectives had to work patrol shifts. (Doc. 52-1 at 16–17). She also discussed her support of Dane Kyser for Chief of Police. (Doc. 58-3 at 3:6–10). She was able to specifically identify several officers that she spoke with, but was not able to recall any specific dates that these conversations occurred. (Doc. 52-1 at 18:17-25; Doc. 58-3 at 2:8–18).

She further contends that she had various conversations with city employees at the Yucca Recreational Center, which also constituted protected speech. (Doc. 52-1 at

41:16–42:4). She testified at her deposition that she warned fellow officers and members of the community that if Defendant Scifres were to be selected for the Police Chief job that: "Officers would quit. The community would be the one to suffer. Officers would not respond to their calls. The morale is down." (Doc. 52-1 at 37:12–22).

Again, the Court considers the content, form, and context of Plaintiff's speech, as well as her stated motivation for making the speech, in conducting its analysis. Generally, the subject matter of the speech at issue, as described by Plaintiff, consists of vague recollections touching on officer morale, understaffing, shift hours, the quality of other officers' work, and her subjective belief about what would happen if Defendant Scifres were to be hired as Police Chief.

Plaintiff contends that her speech was a matter of public concern because she discussed her perception of poor officer morale and her fears about officer safety in light of understaffing. (Doc. 52-1 at 19:12–20:21). She contends that other officers threatened to quit the Department if Defendant Scifres became Police Chief, but that she never talked negatively about Defendant Scifres. *Id.* When asked, she could not remember the dates of these conversations, who spoke, or what she said specifically. *Id.* She could only generally recall the substance of the conversations. *Id.*

Plaintiff alleges that she "expressed grave concern for the community at the possible promotion of Defendant Scifres, an officer of questionable character and abilities." (Doc. 1 at 8). She maintains that all of her statements questioning the advancement of Defendant Scifres constituted protected speech because she spoke out on Police Department matters of serious concerns to the Roswell community. (Doc. 1 at 9–10).

Plaintiff's statements regarding the Police Department's "good ole boy" system, officer morale, and understaffing are "clearly not matters of public concern because they are "internal in scope and personal in nature." *See Brammer-Hoelter*, 492 F.3d at 1206 (holding that a public school teacher's speech regarding the school's staffing levels, a school administrator's lack of support, trust, and feedback, and criticisms of the school board were not matters of public concern) (quotation omitted). The Tenth Circuit has specifically held that an individual's complaints about staffing levels inherently relate to the amount of work that an employee must perform, and therefore is a personal, rather than a public concern. *Id.*

Plaintiff also discussed her concerns about her fellow officers' under-performance in their duties, and the effect it had on the Roswell community. She testified at her deposition that: "Officers didn't want to do anything. They weren't serving the community . . . they would just take their calls, that's it. Because they were upset because the morale was at the all time low." (Doc. 58-3 at 15:1-5; Doc. 58-3 at 24:3–18). She believed that if Defendant Scifres were to be hired as Chief of Police, more officers would quit and the community would suffer. (Doc. 58-3 at 36:12–22).

The Court does not find that Plaintiff's statements regarding her fellow officers' failure to serve the community, or her belief that the community would suffer if Defendant Scifres was selected as Police Chief, to be on matters of public concern. While Plaintiff's speech may be related to the Police Department's efficient performance, her comments on the matter "did not sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Wilson*, 732 F.2d at 768. Plaintiff's statements consisted of her subjective belief about her under-performing

fellow officers, and speculation about what would happen if Defendant Scifres became Police Chief.

While the selection of the Roswell Police Department police chief could conceivably be a topic of general interest to the public, Plaintiff's personal feeling is not a matter of public concern within the meaning of previous U.S. Supreme Court decisions. *See generally Connick*, 461 U.S. at 163. In *Connick*, the plaintiff's speech consisted of her opposition to her transfer to another division of her public agency, employee morale, and her lack of confidence in supervisors. The U.S. Supreme Court held that speech pertaining to the confidence and trust than an employee possesses in her supervisors and the level of office morale, did not fall "under the rubric of matters of public concern." *Id.* at 148 (alterations omitted).

To be sure, the Court will further analyze Plaintiff's motivation for her speech. Plaintiff maintained throughout her deposition that she did not mean to say anything negative about Defendant Scifres, and that she only wanted to support who she thought would be a good candidate to run the Police Department and help recruit more officers. (Doc. 52-1 at 21:17-25; Doc. 58-3 at 24:19-21). She explained that low morale at the Police Department was another reason that she participated in these conversations. She stated that she "was concerned if [Scifres became police chief because] our morale at the department was at the all time low." (Doc. 58-3 at 14:18-24). She testified that she did not initiate conversations with the other officers, and that she was always approached by others to discuss the Police Chief vacancy. (Doc. 52-1 at 18:2–8; Doc. 52-1 at 41:16–42:4; Doc. 52-1 at 4:6–10) ("They had already brought up the discussion of the new Chief of Police and then I brought up who I was supporting."). She indicated

that members of the community also solicited her opinion regarding the Police Chief position. (Doc. 52-1 at 37:2–7).

Plaintiff has maintained throughout that she never intended to speak negatively about Defendant Scifres. She has also repeatedly insisted that she was always a participant in these conversations, and never initiated them. Therefore, the Court cannot find that her motivation in engaging in these conversations with other officers andcity employees was to disclose any official misconduct, malfeasance, or breach of the public trust. Rather, her interest was to discuss her opinions regarding low employee morale, low retention rates, officer shift schedules, and her preference for her next supervisor. This speech is entirely about internal departmental affairs and workplace frustration, and therefore only on matters of personal interest to Plaintiff.

Thus, the Court finds that, given the content, form, and context of Plaintiff's speech, along with her stated motivation in making the speech, these conversations did not touch on matters of public concern, and were unprotected speech.

## V.      Conclusion

For the reasons outlined above, the Court finds that none of Plaintiff's individual statements constituted a matter of public concern, and therefore were unprotected speech pursuant to the First Amendment. The Court need not reach the other prongs of the *Garcetti/Pickering* test, and finds that Defendants are entitled to summary judgment on all of Plaintiff's claims as a matter of law. *See Brammer-Hoelter*, 492 F.3d at 1203.

**IT IS HEREBY ORDERED** that *Defendants' Motion and Memorandum in Support of Motion for Summary Judgment*, (Doc. 52), be **GRANTED**, and this action dismissed with prejudice.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE